Lucius Wilmerding, Jr., Plaintiff, *v.* Alberto C. Bonaschi and Others, Constituting the Teachers' Retirement Board of the City of New York, Teachers' Retirement Board of the City of New York, Frank J. Taylor, Comptroller of the City of New York, The City of New York, and Henry Peyser and Augusta Peyser, as Executors, etc., of Nathan Peyser, Defendants.

Supreme Court, Special Term, New York County, January 3, 1938.

*Nordlinger, Riegelman & Cooper* [*Jacob M. Dinnes* of counsel], for the plaintiff.

*Evans & Rees*, for the defendants Henry Peyser and another, as executors, etc.

*Paul Windels, Corporation Counsel* [*Nicholas Bucci* and *Donald I. Peyser* of counsel], for the defendants other than Henry Peyser and another, as executors, etc.

SHIENTAG, J. This is a taxpayer's action (1) to cancel and annul a determination of the teachers' retirement board of the city of New York on June 10, 1935, classifying one Nathan Peyser as a " present-teacher;" (2) to restrain the teachers' retirement board from issuing to Nathan Peyser a prior service certificate on a " present-teacher " basis; and (3) to restrain the city of New York from making payments to the teachers' retirement fund on the basis of a classification of Nathan Peyser as a " present-teacher." Subsequent to the service of the summons and complaint the defendant Peyser died, and the executors of his estate were substituted in his place and the action continued against them as defendants.

By chapter 303 of the Laws of 1917 the Legislature enacted what is now section 1092 of the Greater New York Charter, establishing a teachers' retirement fund to succeed a teachers' retirement fund previously established in 1894. Definition 8 of section 1092 defined a " present-teacher " as " any teacher employed in the public schools as a teacher on the first day of August, nineteen hundred and seventeen, or on leave of absence on that date." Definition 9 of the same section defined a " new-entrant " as " any teacher appointed to serve in the public schools after the first day of August, nineteen hundred and seventeen." The distinction was important since " present-teacher " was given added benefits.

Nathan Peyser was appointed a teacher in the city of New York on September 9, 1906, and on August 1, 1917, he was principal of Public School 39, Manhattan. On September 5, 1917, Peyser resigned from the school system to become director of the Educational Alliance, and withdrew his contributions to the teachers' retirement fund, consisting of $17.28. He was reinstated in the school system on July 17, 1919, and on September 24, 1919, was transferred as principal of Public School 158, Brooklyn.

On May 25, 1920, without a hearing, the teachers' retirement board classified Peyser as a " new-entrant," and thereafter denied his request for reconsideration. On September 8, 1920, Peyser wrote to the board formally applying for review of its action, attaching a letter which set forth the circumstances of his resignation and reinstatement. On December twenty-eighth a member of the board, assigned to investigate the case, recommended that Peyser be classified as a " present-teacher," and on January 25, 1921, he was so classified by formal resolution of the board. It is evident from the minutes of this meeting that thorough consideration had been given to Peyser's case and that his reclassification was the result of the board's considered judgment after investigation. Although no prior service certificate was issued to Peyser, he filed his prior service claim with the board on a " present-teacher "

basis, and from January 25, 1921, until December 19, 1933, contributed to the fund on the basis of a " present-teacher " classification, which contribution was accepted by the board.

On November 26, 1929, the board created a committee to report on the prior service claims of the teacher-subscribers with a recommendation as to the prior service credit to be granted such teachers. This committee, on December 19, 1933, introduced a resolution before the board authorizing the issuance to the teachers named in the resolution of the prior service set next to their respective names. This resolution contained over one hundred names, including that of Nathan Peyser. His name, with the prior service set next to it, was included in a list of names under the heading, " New Entrants." Although it was the general custom to set forth in separate resolutions all cases involving a modification or reversal of a prior act of the board, in this instance, with no individual consideration being given to the Peyser case and with no mention of the fact that the board would actually be reclassifying Peyser, the blanket resolution containing his name was passed. A " new-entrant " prior service certificate was issued to Peyser, and on March 7, 1934, Peyser was informed by the board's actuary that his classification had been changed and his rate of contribution increased.

On March 13, 1934, Peyser wrote to the board applying for a change of his classification and rate of contribution to the fund. Although his application for a change appeared on the calendar of every board meeting between March 27, 1934, and June 10, 1935, and although Peyser presented himself to the board on several occasions to be heard and submitted a brief on the facts involved in his case, no action was taken by the board until June 10, 1935, at which time the board classified Peyser as a " present-teacher." In acting on the case, the board voted to " restore to Dr. Peyser the classification of ' present-teacher,' which he originally held for so many years, on which he paid." During all this period of review Peyser continued to contribute to the fund on a " present-teacher " basis, and his contributions were accepted by the board.

Meanwhile, on May 4, 1935, the Legislature enacted chapter 706 of the Laws of 1935, which added to subdivision H of section 1092 of the Greater New York Charter these words: " Except as to credits or allowances erroneously granted for attendance as a pupil at a training school for teachers, or clerical or mathematical errors in the computation of prior service, no prior service certificate heretofore issued to any contributor by the retirement board shall hereafter be reviewed or modified after such certificate or modified certificate shall have been in effect for one year, and all such cer-

tificates are hereby validated and confirmed, to the same extent and with the same effect as if issued pursuant to express authority of law." This amendment went into effect immediately.

The main question presented for consideration is whether this language prevented the board, on June 10, 1935, from classifying Peyser as a " present-teacher " as the result of an appeal instituted on March 13, 1934, within three months of the classification of Peyser as a " new-entrant " and fourteen months prior to the time chapter 706 of the Laws of 1935 went into effect.

When Peyser instituted his appeal he did so pursuant to that portion of subdivision H of section 1092 of the Greater New York Charter which read: " As soon as practicable thereafter, the retirement board shall verify such statement as to prior-service and shall issue to each teacher a certificate certifying to the aggregate length of his prior-service. Such certificate shall be final and conclusive as to his prior-service unless thereafter modified by (a) the retirement board upon application by the teacher; or (b) by the board of education upon application by the teacher or by the retirement board, provided such application for modification be made to said board of education within one year after the issuance of a certificate or a modified certificate by the retirement board." This language was re-enacted by chapter 706 of the Laws of 1935.

Two distinct procedures are embraced within the foregoing portions of chapter 706 of the Laws of 1935 — review of a prior-service certificate and modification of a prior-service certificate. " Review " begins with the application for a change by a teacher and ends only when some action is taken by the board. Once the application has been made and until some action is taken upon it the process of " review " continues. The action of the board may be either a refusal or a consent to make a " modification." It is clear from the statute that if a certificate has been issued and has continued uncontested for one year prior to May 4, 1935, no application for a change can thereafter be made to the board — the board is forbidden to " review " such certificates. Since the statutory interdiction applies only to a review " thereafter " instituted, however, it is clear that an application for a change of any certificate can be made so long as it is made prior to May 4, 1935, when chapter 706 of the Laws of 1935 became effective. The board is permitted to " review " such certificates.

Does the statute prevent a " modification " by the board of certificates issued one year prior to May 4, 1935, if the application for a change has been made prior to this last date? To so construe the statute would lead to the absurd result that, although the board can " review " the certificate, it is forbidden to make any " modifi-

cation " of it. The right to a " review " granted to a teacher becomes meaningless under such a construction, for his remedy has been completely emasculated; the power given to the board to review such certificates becomes an empty formula, for the power can be exercised, if at all, only imperfectly. Any such absurd and unjust construction will be avoided if the statute can receive another construction consonant with its primary purpose. (*People ex rel. West F. I. Co.* v. *Davenport,* 91 N. Y. 574, 585; *Spencer* v. *Myers,* 150 id. 269, 275; *Miller* v. *Maujer,* 82 App. Div. 419.)

The purpose of the statute was to prevent constant changes in retirement classifications and to achieve a measure of certainty in the status of contributors to the fund. It was designed with an eye to prevent the kind of abuse to which Peyser had been subjected — a reclassification after his status had been fixed — and which plaintiff contends is irremediable. The beneficent purpose of the statute will be fully carried out if the board is permitted to modify the certificates of those who applied for a change prior to May 4, 1935, the date when chapter 706 of the Laws of 1935 went into effect. There has been no showing that the number of those applying for a change prior to May 4, 1935, is so excessive that the legislative intent will be frustrated or nullified in the slightest respect. Rather, the construction dictated by common sense permits the full effectuation of the purpose of the statute without the hardship produced by plaintiff's interpretation. The statute was meant to prevent, not to foster, injustice. It would be most inequitable to disallow a modification in a case such as this; one in which the subsequent modified classification was brought about without consideration of the individual case, in which an application for a change was made within a short time after this classification and fourteen months prior to the passage of chapter 706, and in which a modification was delayed only because of the inactivity of the board itself.

There is another principle by which this modification can be sustained. It is clear, as has been pointed out, that the delay in modification was not occasioned by any laches or negligence on the part of Peyser, but was caused solely by the board itself. This delay of the board in acting upon the application cannot prejudice Peyser, but its determination whenever made must be deemed retroactive to the date Peyser made his application — March 13, 1934. (*Matter of O'Brien* v. *N. Y. State Teachers' Retirement Board,* 215 App. Div. 220; affd., 244 N. Y. 530. See, also, *Latham* v. *United States,* 131 U. S. xcvii.) The board will not be permitted by its own delay to deprive itself of power to modify in accord-

ance with the rights of the applicant and so defeat the mandate of the statute and the ends of justice. The plaintiff seeks to circumvent the principle of the *O'Brien* case (*supra*) by arguing that whereas in that case, which involved an application for retirement, the board was under a duty to act, in the case at bar the board was under no duty to reconsider its determination. This argument mistakes the function of the board. The board was charged with the duty of verifying the claims of service and issuing a prior service certificate therefor. (Greater New York Charter, § 1092, subd. H.) In the event that an error was made the teacher was specifically given the right to apply to the board for a modification. (Greater New York Charter, § 1092, subd. H.) The board was consequently under a duty to act upon that application, reconsider the case and modify the certificate if in fact a modification was called for. It could not arbitrarily refuse to hear the legitimate claims of contributors to the fund. Being as much under a duty to act as the board in the *O'Brien* case (*supra*), the principle there enunciated must be held applicable to the case at bar.

The decision of my learned brother at Special Term on a prior motion for judgment was based solely on the pleadings before him. It does not govern the case as now presented. Nowhere in the pleadings did the date when Peyser applied for a modification appear. For all that the learned justice knew from the pleadings, the application might have been made after the passage of chapter 706 of the Laws of 1935. Since that decision the pleadings have been amended to state specifically when and under what circumstances Peyser's application was made. The truth of these allegations was established on the trial.

It is clear that Peyser was entitled to a classification as " present-teacher." This subject was discussed thoroughly on the prior motion for judgment on the pleadings. (*Wilmerding* v. *Bonaschi*, N. Y. L. J. Dec. 4, 1935, p. 2219.) Suffice it to say now that the facts brought out on the trial establish that there was no intention to leave the school system permanently, and that Peyser's resignation and reinstatement " must be taken as equivalent to a leave of absence since such was manifestly the intention of the parties." (*Matter of Brown* v. *Teachers' Retirement Board*, 239 App. Div. 178; affd., 264 N. Y. 493. See, also, *Matter of Everitt* v. *Teachers' Retirement Board*, 135 Misc. 916; affd., 229 App. Div. 857; *Matter of Goldstein* v. *Teachers' Retirement Board*, 235 id. 668; *Matter of Herdling* v. *Teachers' Retirement Board*, 243 id. 756.) Peyser's withdrawal of his contributions was not made with the intention of permanently severing his connection with the school system,

but was an action forced upon him by the terms of the Greater New York Charter in existence at the time (§ 1092, subd. J, ¶ 1). The considered judgment of the teachers' retirement board was that Peyser was entitled to the classification of "present-teacher." The facts established at the trial bear out the opinion of the board, and clearly show that the classification as "present-teacher" was one called for by the authorities.

Judgment for defendants. Thirty days' stay, sixty days to make a case. Settle findings of fact, conclusions of law and judgment in accordance with this decision on notice.