# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 19, 2015

**NO.   33,065**

**THE NATIONAL EDUCATION
ASSOCIATION OF NEW MEXICO,
NATIONAL EDUCATION
ASSOCIATION–SANTA FE, and
TERENCE MIRABAL,**

　　　Petitioners-Appellees,

v.

**SANTA FE PUBLIC SCHOOLS,
DR. JOEL D. BOYD, Superintendent,**

　　　Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sarah M. Singleton, District Judge**

Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Elizabeth C. Clifford
Santa Fe, NM

for Appellee

Walsh, Anderson, Gallegos, Green & Treviño P.C.

Carol S. Helms

Elena P. Serna

Albuquerque, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

{1}     This case requires us to interpret certain provisions of the School Personnel Act. We hold that the "harmless error" provision of NMSA 1978 Section 22-10A-28(L) (2003) applies to allow the late filing of a notice requesting a hearing on a discharge notice, under Section 22-10A-27(B). We therefore affirm the permanent writ of mandamus.

**I.     Background**

{2}     On February 26, 2013, the superintendent of the Santa Fe Public Schools (SFPS) gave Mirabal a notice of intent to discharge him from his teaching and coaching positions with SFPS. The notice informed Mirabal of his right to request a hearing and that if he did not request a hearing within five working days from the date of the notice, his discharge would become final. Mirabal was subsequently informed that, due to his failure to submit a timely request for hearing, his discharge was final. On March 7, 2013—two days after the deadline for doing so had passed—Mirabal notified the SFPS of his intent to exercise his right to a hearing before SFPS. The termination was effected and no hearing was held. Mirabal, the National Education Association of New Mexico, and National Education Association–Santa Fe (collectively, Petitioners) subsequently obtained an alternative writ of mandamus

from the district court, ordering SFPS to "[c]omply with [the] mandatory non-discretionary duty to provide a discharge hearing pursuant to the School Personnel Act[,]" or file a response to the writ. SFPS filed its response to the writ, along with a motion to quash the writ and a motion to dismiss for lack of jurisdiction.

{3}     The district court held a show cause hearing to address SFPS's reasons for its noncompliance with the writ. During that hearing, the parties addressed SFPS's response, motion to quash, and motion to dismiss. Petitioners argued that, although Mirabal departed from the five-day time period enumerated in Section 22-10A-27(B), he was entitled to a hearing applying the presumption of harmless error under Section 22-10A-28(L) to his late request. Thus, they asserted, SFPS was therefore required to demonstrate prejudice arising from his departure from Section 22-10A-27(B)'s procedures and had failed to do so. SFPS was therefore required to provide a hearing. Respondents responded by arguing that there was no mandatory duty to provide a hearing when the right to a hearing was not invoked by a request within the time prescribed by the Legislature in Section 22-10A-27(B). In addition, Respondents asserted that the requirement that a party "demonstrate prejudice" indicates there is some discretion in such a decision, and that the writ—intended for non-discretionary, ministerial duties—was therefore improper. SFPS also argued that Mirabal's untimely request resulted in prejudice in three ways: its interest in efficient timely

administration was prejudiced; it suffered a monetary loss; and public policy prejudice resulted from creation of an ambiguity in discharge proceedings.

{4}     The district court held that "as a matter of statutory construction," the harmless error provision of Section 22-10A-28(L) applies to this case. It reasoned that the harmless error subsection explicitly includes Section 22-10A-27(B) in its applicability, and concluded that "unless the school can demonstrate prejudice, an employee can be late in requesting a hearing and [the] school district can be late in providing a hearing unless prejudice is shown by the other side." Determining that Respondents had not demonstrated prejudice, the district court commented that the arguments Respondents made to show prejudice are "arguments that generally address the evils that befall not strictly enforcing time limits, and they are not the kind of prejudice that was envisioned by the Legislature when writing Section 22-10A-28(L)." The district court noted that the parties agreed that if the request for hearing had been timely, there would have been a mandatory duty to provide a hearing and that the only real issue in the case was whether the late filing somehow turned the duty to provide a hearing into a discretionary duty. Concluding that the statute indicated that prejudice would be determined by a "reviewing authority" and that the school is not vested with the discretion not to grant a hearing, "particularly where [it has] made no showing of prejudice," the district court issued a permanent writ and denied the motions to quash.

## II. Discussion

## A. Statutory Interpretation

{5} We apply a de novo standard of review when interpreting the School Personnel Act. *Aguilera v. Bd. of Educ.*, 2006-NMSC-015, ¶ 6, 139 N.M. 330, 132 P.3d 587; *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 (stating "statutory interpretation is an issue of law, which we review de novo"). Our first step in this case is an analysis of whether Section 22-10A-28(L), the harmless error provision, applies to the procedures enumerated in Section 22-10A-27(B).

{6} When interpreting a statute, we attempt to discern the intent of the Legislature. *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 18, 333 P.3d 947, *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 29, 147 N.M. 583, 227 P.3d 73 ("It is the high duty and responsibility of the judicial branch of government to facilitate and promote the [L]egislature's accomplishment of its purpose.") (first alteration, internal quotation marks, and citation omitted). In order to ascertain the intent of the Legislature, we employ the plain meaning rule. *Truong*, 2010-NMSC-009, ¶ 37. "[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong*, 2010-NMSC-009, ¶ 37 (internal quotation marks and citation omitted). As such, we

4

"presume[] that the words in a statutory provision have been used according to their plain, natural, and usual signification and import[.]" *DeMichele v. State Taxation and Revenue Dep't*, 2015 NMCA___, ¶ 14, ___ P.3d ___ (No. 33,778, June 3, 2015) (internal quotation marks omitted). We "[give] words their ordinary meaning, unless the Legislature indicates a different one was intended." *Starko*, 2014-NMSC-033, ¶ 46 (Vigil, C.J., dissenting) (internal quotation marks omitted), and do not "read into a statute language which is not there, especially when it makes sense as it is written." *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (internal quotation marks and citation omitted). All parts of a statute must be read together to accurately reflect legislative intent, and courts must "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

{7}     Sections 22-10A-27 and -28 encompass the scope of the right to, and procedures for, discharge hearings and their appeals under the School Personnel Act. Section 22-10A-28 generally governs appeals from discharge hearings provided in Section 22-10A-27. Construing these statutes in pari materia, we have already noted that Sections 22-10A-27 and -28 govern both pre-and post termination procedures for the discharge of school employees. *West v. San Jon Bd. of Educ.*, 2003-NMCA-130, ¶ 11, 134 N.M. 498, 79 P.3d 842. They embody the due process rights of school

5

employees who have a protected property right in receiving notice and a hearing prior to their termination. *Id*.; *Bd. of Educ. v. Harrell*, 1994-NMSC-096, ¶ 39, 118 N.M. 470, 882 P.2d 511. The requirement of a pre-discharge hearing contained in Section 22-10A-27 is intended for the protection of the school employee's rights. *Bd. of Educ. v. Singleton,* 1985-NMCA-112, ¶ 17, 103 N.M. 722, 712 P.2d 1384. The hearing is mandatory once requested. *See id.* ¶ 18. SFPS does not disagree. After the school employee exercises his or her right to a pre-discharge hearing under Section 22-10A-27(B), Subsection (C) requires the school board to notify the employee of a hearing to be held between twenty and forty days after the notice of election, with not less than ten days notice provided prior to the hearing. The time specified for conducting a hearing is also mandatory, *Bd. of Educ.*, 1985-NMCA-112, ¶ 20, to the extent that failure to hold a timely hearing constitutes reversible error. *Id.* ¶ 19. As the district court properly found, nothing in Section 27 to 22-10A-27 indicates discretion in granting or scheduling a hearing following the employee's late submission of an election.

{8}     Section 22-10A-28(L)—the harmless error provision—provides that "[u]nless a party can demonstrate prejudice arising from a departure from the procedures established in this section and in Section 22-10-17 NMSA 1978 . . ., such departure shall be presumed to be harmless[.]" The explicit application of harmless error to Section 22-10A-27's provision for requesting a discharge hearing unambiguously

6

expresses the Legislature's intent that failure to comply with the five-day time limit is deemed harmless error, absent a showing of prejudice. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 32, 117 N.M. 346, 871 P.2d 1352 ("[T]he [L]egislature is presumed not to have used any surplus words in a statute; each word is to be given meaning."). Respondents argue that the harmless error presumption does not apply to this case because the five-day time period enumerated in Section 22-10A-27(B) is mandatory, and the right to a hearing was not triggered in this case. Respondents further claim that the plain text of the statute indicates that the harmless error presumption only applies to *appeals* by a certified school employee. Specifically, SFPS argues that the title of Section 22-10A-28 indicates that the presumption applies only to appeals from and arbitration of hearing decisions.

{9}     We disagree because Section 22-10A-28(L) regards any departure from procedure that does not prejudice a party as harmless; Respondents must demonstrate prejudice before Mirabal's two-day delay in electing to request a hearing on his dismissal can be considered as a bar to his entitlement to a hearing. Stated above, we take this to be a legislative directive defining harmless error as any departure from procedures that does not prejudice a party. *Aguilera v. Bd. of Educ.*, 2005-NMCA-069, ¶ 10, 137 N.M. 642, 114 P.3d 322 (requiring courts to accept the Legislature's definitions of terms ), *aff'd on other grounds by* 2006-NMSC-015, 139 N.M. 330, 132 P.3d 587). Thus, it applies as much to an employee's tardy election to

request a discharge hearing under Section 22-10A-27 as to the procedures for appeal of its result as provided otherwise by Section 22-10A-28.

{10} Respondents' reading of the harmless error provision disregards its specific inclusion of Section 22-10A-27(B). SFPS's suggestion that the title of Section 22-10A-28(L), rather than the language, governs the statute's applicability does not comport with the plain meaning rule, by which we are guided. We do not read the harmless error provision separately from the rest of the statute, as Respondents invite us to do. *Key*, 1996-NMSC-038, ¶ 14. While Section 22-10A-27(B) read alone, does seem to indicate that the five-day time period is mandatory, reading it in conjunction with Section 22-10A-28(L) paints a different picture; noncompliance results in failure only when the other side is prejudiced by the delay. Respondents make an argument on this point which, as we understand it, asserts that allowing Mirabal's untimely hearing request renders Section 22-10A-27(B)'s five-day time period superfluous. *In re Rehabilitation of W. Investors Life Ins. Co.*, 1983-NMSC-082, ¶ 12, 100 N.M. 370, 671 P.2d 31 ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous."). Our interpretation of the statute—imposing a harmless error presumption on the five-day time limit—does not render that five-day limiting language superfluous. Under our interpretation, Section 22-10A-27(B) does not remove an employee's right to a hearing; instead, it adapts the deadline to permit untimely requests, so long as any delay will not prejudice a party's interests.

{11} The clear language of the statute applies the harmless error presumption to the procedures contained in Section 22-10A-27. We therefore conclude that the harmless error presumption applies to Mirabal's two-day departure from Section 22-10A-27(B)'s procedures. We now determine whether Respondents made a sufficient demonstration of prejudice to overcome that presumption.

**B.      Respondents Did Not Demonstrate Prejudice**

{12} Section 22-10A-27(B) gives a school employee, upon hearing of the superintendent's intent to recommend discharge, the discretion to elect to request a hearing. The employee's election to exercise the right to a hearing may be given to the school authorities within five working days of the discharge notice. The school board cannot, by statute, convene a hearing less than twenty or more than forty days after the hearing request. Notice of the hearing must be given at least ten days prior to the hearing. In effect, Section 22-10A-27(C) provides for up to ten days of dead time between the employee's notice of election and the board's notice of hearing. Two days' delay in requesting a hearing that can take place within a forty-day window is not inherently prejudicial, and Respondents do not argue that it is.

{13} Respondents assert, however, that Mirabal's failure to timely request a hearing was prejudicial in three ways: "(1) in its interest in efficient administration and reliance upon statutes as written; (2) monetarily, in that under the Act, an employee's

9

right to pay and benefits ends only when termination is effective; and (3) paramount public policy prejudice, in that the trial court's interpretation would create ambiguity for [SFPS] in discharge proceedings." We reject the first assertion of prejudice. Respondents provide us with no examples of how its efficient administration was prejudiced by a two-day delay and gives no specific examples by which the untimely request adversely affected its efficiency. The untimely request itself could not adversely affect Respondents' reliance upon the statute—only the court's decision to allow the untimely request could throw that reliance into question. Thus, we conclude that Respondents have failed to demonstrate prejudice to its efficient administration and reliance upon statutes.

{14} Respondents' assertion that they suffered monetary prejudice as a result of the extra two days of pay given to Mirabal is similarly unpersuasive. Respondents asserted below that "it is not within the province of [the district] court" to allow two days' pay to be given to employees who have no statutory right to it. However, Respondents present no evidence that Mirabal received pay and benefits for the two extra days between the March 5 deadline and the March 7 request. To the contrary, according to the facts in the record, Respondents notified Mirabal of his discharge and presumably, Mirabal would not have received pay and benefits following his effective discharge. Only the enforcement of the writ allowed Mirabal to collect administrative leave starting March 8, 2013. The two-day delay would have no

10

monetary significance to SFPS; they asserted no other pecuniary loss. We conclude that, regarding Respondents' assertion of monetary loss, there has been no demonstration of prejudice.

{15}  Finally, we conclude that Respondents have also not proven prejudice through their assertion that "paramount public policy" was prejudiced by the district court's interpretation of the statute. Respondents' assertion of prejudice here is misdirected; instead of showing prejudice arising from Mirabal's untimely request, it asserts prejudice arising from the district court's issuance of the writ. General assertions of prejudice are insufficient to demonstrate prejudice, *see, e.g.*, *In re Castellano*, 1995-NMSC-007, ¶ 15, 119 N.M. 140, 889 P.2d 175 (holding that an assertion of prejudice is not a showing of prejudice), and Respondents have not demonstrated, with any specificity, how public policy was prejudiced by Mirabal's actions.

{16}  In total, Respondents' assertions of prejudice deal not with how Mirabal's untimely request was prejudicial, but rather with how the writ is prejudicial. This is not the showing that Respondents are required to make under the statute: "a party can demonstrate prejudice *arising from a departure from the procedures established in . . . Section [22-10A-27]*" to overcome the presumption of harmless error. Section 22-10A-28(L) (emphasis added). We conclude that SFPS failed to demonstrate prejudice from Mirabal's untimely hearing request. We therefore hold that, due to Respondents'

failure to overcome the presumption, Mirabal's departure from the five-day time requirement constitutes harmless error. As such, SFPS should have held a hearing.

**C.      The Writ of Mandamus was Proper**

{17}     We next address SFPS's assertions that mandamus is improper because the statute does not impose a clear legal duty to perform an act. A writ of mandamus may be issued "only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-23, ¶ 16, 124 N.M. 698, 954 P.2d 763; NMSA 1978, § 44-2-5 (1884); NMSA 1978, § 44-2-4 (1884) (stating mandamus "may be issued . . . to compel the performance of an act which the law specially enjoins as a duty."). A writ of mandamus applies to ministerial duties—those arising when the law dictates that "a public official must act when a given state of facts exist"—and is inappropriate "when the matter has been entrusted to the judgment or discretion of the public officer." *Mimbres Valley Irrigation Co. v. Salopek*, 2006-NMCA-093, ¶ 11, 140 N.M. 168, 140 P.3d 1117. Respondents do not disagree that a pre-discharge hearing is generally mandatory when requested. Discretion, in the context of ministerial duties, exists when an act "may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it

should be performed[.]" *State ex rel. Four Corners Exploration Co. v. Walker*, 1956-NMSC-010, ¶ 8, 60 N.M. 459, 292 P.2d 329 (noting that "when a positive duty is enjoined and there is but one way in which it can be performed lawfully, then there is no discretion." (Emphasis omitted.)).

{18}     There is no dispute that SFPS would have had a mandatory, ministerial duty to hold a hearing had Mirabal initially complied with the five-day time period set forth in Section 22-10A-27(B). Thus, we must determine whether the untimely nature of the request made SFPS's duty to hold a hearing discretionary. The district court concluded that the duty was not discretionary, and we agree.

**1.     SFPS's Duty to Hold a Hearing Was Not Discretionary**

{19}     SFPS finds significance in the statute's language requiring a party to *demonstrate* prejudice: "the very nature of that language shows discretion somewhere." While we agree that the language indicates the existence of a reviewing body that is assigned the task of deciding whether prejudice existed, we do not agree that such decision rises to the level of discretion in this case.

**a.     Discharge Hearings Under Section 22-10A-27(B) Are Mandatory Unless Prejudicial**

{20}     A discharge hearing, once requested, is mandatory, regardless of when it is requested, "[u]nless *a party* can demonstrate prejudice[.]" Section 22-10A-28(L) (emphasis added). Mirabal exercised his right to have a hearing by giving written

13

notice of his desire to have a hearing. That triggered SFPS's mandatory duty to hold one. We note that our holding here does not *require* a party to have a hearing; if no request is made, the local school board is under no duty to hold a hearing. We next look to ascertain who in this case is the "party" saddled with the burden of proving prejudice.

{21} In this case, it was the Superintendent's burden to prove prejudice resulted from Mirabal's two-day delay. The Superintendent is listed as a party in the statute. Section 22-10A-27(D), (G). The "local school board or governing authority," Section 22-10A-27(C), which in this case is SFPS, is not listed as a "party" under the statute governing discharge hearings. Instead, SFPS issues subpoenas, permits the parties to call witnesses, and renders a written decision. Sections 22-10A-27(F), (H), (J). Under the clear language of the statute, then, it is the Superintendent, not SFPS, that must demonstrate prejudice arising from the two-day delay to overcome the harmless error presumption.

**b.      No Prejudice Exists—Obligation to Hold Hearing Was Not Discretionary**

{22} By Respondents' interpretation of Section 22-10A-28(L), the decision of whether a party has adequately demonstrated prejudice is a discretionary decision. Under the facts of this case, we need not address whether the Legislature's use of the word "demonstrate" indicates discretion. Any discretion that could have existed was

14

removed by the absence of plausible prejudice arguments. Under a plain reading of the statute, no discretion exists until there is a demonstration of prejudice. As discussed above, the two-day departure from Section 22-10A-27(B)'s procedures was not prejudicial. Thus, SFPS never had discretion, and it continues to have a mandatory duty to hold a hearing.

**2.     No Other Adequate, Speedy Remedy**

{23}     By statute, a writ of mandamus "shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law." Section 44-2-5. The School Personnel Act does allow for a discharged teacher to appeal a local school board's decision, but only *after* a discharge hearing is held. Section 22-10A-28(A). There is no remedy under the School Personnel Act for a discharged employee who has had no hearing. We have previously held, and our Supreme Court has confirmed, that mandamus is properly available where there has been no hearing before the local school board. *See Quintana v. State Bd. of Educ.*, 1970-NMCA-074, ¶¶ 8-9, 81 N.M. 671, 472 P.2d 385; *see also Brown v. Romero*, 1967-NMSC-057, ¶ 8, 77 N.M. 547, 425 P.2d 310 (concluding that a teacher's breach of contract claim, arising out of employment contract and challenging denial of hearing, was premature where she had not brought a mandamus action to "pursue and exhaust" her remedies). Respondents' briefs do not present any suggestions as to what alternative, speedy remedies are

available to Petitioner, and instead seek to foreclose the only option available for review; absent this information, we do not review the argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *see also Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (stating that we have no duty to entertain arguments when no authority is presented in support of an argument). We conclude that Petitioners had no other adequate, speedy remedy at law; mandamus was properly granted.

**CONCLUSION**

{24}    We affirm the district court's order issuing a permanent writ of mandamus. For the foregoing reasons, we also affirm the district court's denial of Respondents' motion to dismiss and motion to quash the writ.

{25}    **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

16

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**CYNTHIA A. FRY, Judge**